# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 17-CR-96

MYCHAL SYKES, et al.,

        Defendants.

## RECOMMENDATION AND ORDER

Mychal Sykes is charged along with eight others with conspiring to distribute one kilogram or more of heroin. (ECF No. 1 at 1-2.) He allegedly was a member of a drug trafficking organization headed by Kavanaugh C. Coleman (the Coleman DTO). As part of its investigation into the Coleman DTO investigators obtained authorization to monitor calls to and from two phone numbers associated with Coleman. Sykes's calls were recorded as a part of this monitoring. He has moved to suppress his intercepted calls on the grounds that the government failed to demonstrate that a wiretap was necessary, *see* 18 U.S.C. § 2518(1)(c). (ECF No. 137.) He also seeks a bill of particulars. (ECF No. 138.)

**Necessity of Wiretap**

"Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication … shall include … a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1). This requirement, commonly referred to as the necessity requirement, "discourages the use of wiretaps as a first-line investigative tool in the mine run of cases." *United States v. Long*, 639 F.3d 293, 301 (7th Cir. 2011). But "it 'was not intended to ensure that wiretaps are used only as a last resort in an investigation.'" *Id.* (quoting *United States v. McLee*, 436 F.3d 751, 762-63 (7th Cir. 2006)). "The statute does not require the government to show absolute necessity." *United States v. Durham*, 766 F.3d 672, 679 (7th Cir. 2014). "[T]he government need not demonstrate that prosecution would be impossible without it or that evidence possibly sufficient for indictment could not conceivably be obtained through other means." *McLee*, 436 F.3d at 763 (citing *United States v. Plescia*, 48 F.3d 1452, 1463 (7th Cir. 1995)). "Hence, the government's burden of establishing necessity is not high, and whether it met that burden is reviewed in a practical, common-sense fashion." *Long*, 639 F.3d at 301 (citing *United States v. Campos*, 541 F.3d 735, 746 (7th Cir. 2008)).

Sykes argues that "the government already had the goods on Coleman" as a result of numerous informants, undercover work, controlled buys, surveillance, and

pen registers, and therefore a wiretap was unnecessary. (ECF No. 137 at 2-3.) According to Sykes, although the affidavit submitted in support of the application outlined the investigative methods that have been used, the affiant offered "mere boilerplate conclusions as to why the investigative procedures were not enough." (ECF No. 137 at 8.)

In Sykes's view, if the investigators needed more information they should have sought search warrants because, although "search warrants wouldn't answer all the agents' questions, there was a good chance that they would uncover significant evidence and produce more informants." (ECF No. 137 at 14.) Sykes also argues, "In many cases, the justification for the wiretap would be the inability to gain access to an insulated leader of a group, but here the government obtained detailed information, confirmed by controlled buys, about the leader of the organization—in other words, the prime target. The government thus lacked necessity for the Title III orders." (ECF No. 137 at 12-13.)

The court finds that the government complied with 18 U.S.C. § 2518(1)(c) and established the necessity of the wiretaps. "[T]he fact that arrest could have occurred earlier does not preclude a finding of necessity where, as here, the basis for necessity was a demonstrated need to root out additional co-conspirators." *Long*, 639 F.3d at 301 (citing *McLee*, 436 F.3d at 763 ("the fact that the government may have been able to indict him in the absence of evidence obtained through the use of a wiretap does not

3

preclude a finding of necessity under § 2518(1)(c)")); *see also United States v. Adams*, 125 F.3d 586, 595 (7th Cir. 1997) (rejecting defendant's argument that wiretap was unnecessary because the "affidavit lists drug transactions involving Hayes which Hayes believes would be sufficient to constitute many of the offenses with which he was ultimately charged after the wiretap"); *United States v. Fudge*, 325 F.3d 910, 919 (7th Cir. 2003) (rejecting the argument "that evidence of a specific individual engaging in a criminal activity obviates the need for any additional, more probing, investigative techniques"). Thus, the court finds it unproblematic that law enforcement continued its investigation despite having probable cause to believe Coleman had committed drug offenses.

Significantly, the government was investigating a drug conspiracy of unknown scope. In the context of an investigation of a conspiracy, the Court of Appeals for the Seventh Circuit has "upheld the 'necessity' of wiretap orders on the basis that investigators were 'having trouble fingering other members of the conspiracy,' *United States v. Farmer*, 924 F.2d 647, 652 (7th Cir. 1991), and that the wiretaps 'allowed the government to ascertain the extent and structure of the conspiracy.' *Plescia*, 48 F.3d at 1463." *McLee*, 436 F.3d at 763; *see also Fudge*, 325 F.3d at 919.

The government emphasizes that it did not know Coleman's source of supply. Sykes responds that investigators knew Coleman was scheduled to travel to his supplier in Gurnee, Illinois on a specific date and argues that investigators should have

4

identified the supplier by following Coleman instead of resorting to a wiretap. However, the affiant stated that Coleman "is extremely surveillance conscious" and noted the sorts of counter-surveillance techniques used by the Coleman DTO. (ECF No. 137-1, ¶ 69.) It is reasonable to assume that under such circumstances mobile surveillance over the course of a trip to Gurnee, Illinois would prove extremely difficult and create a significant risk that investigators would be detected.

The court also finds no issue with the affiant's reliance on arguable "boilerplate" in his explanation for why other investigative techniques would be insufficient. "That the justifications might apply in other, similar investigations is not fatal to an application for a wiretap; a particular kind of crime may pose common, recurring problems for investigators. What matters is that other available investigative procedures had been tried, or were inadvisable or unlikely to succeed under the circumstances." *Durham*, 766 F.3d at 680.

As for Sykes's criticism of the investigators for not resorting to search warrants, the court finds the ineffectiveness of such an investigative tool to be obvious. The investigators knew locations likely to yield valuable physical evidence. But searching a location would have informed the conspirators that law enforcement was on to them and would have effectively terminated the investigation without necessarily identifying the scope of the conspiracy. Moreover, the Coleman DTO tended to distribute drugs from vehicles rather than residences. But traffic stops were an ineffective investigative

tool because members of the organization were aware of the policy of the Milwaukee Police Department not to pursue fleeing vehicles. (ECF No. 137-1, ¶ 79.) Therefore, when traffic stops were attempted, the driver would simply flee at a high rate of speed. (*Id.*)

Finally, the court finds that the affiant was not required to explicitly discuss the collective effectiveness of various investigative techniques. A judge, reviewing the request in a "practical, common-sense fashion," *Long*, 639 F.3d at 301, is readily able to make this sort of assessment.

Therefore, the court will recommend that Sykes's motion to suppress be denied.

**Bill of Particulars**

Sykes seeks a bill of particulars pursuant to Fed. R. Crim. P. 7(f) whereby the government will disclose "the identities of all other persons claimed by the government to be members of the alleged conspiracy in Count One and the date each alleged member (charged or uncharged) joined the conspiracy." (ECF No. 138 at 1.) Sykes argues that such information is necessary so he can determine which statements the government may seek to offer under Fed. R. Evid. 801(d)(2)(E).

The government opposes the request "because the indictment adequately advises the defendant of the charge and because the defendant has access to discovery and the government is following its Open File Policy in this case." (ECF No. 150 at 22.) It notes

6
Case 2:17-cr-00096-PP Filed 02/02/18 Page 6 of 10 Document 156

that Sykes already has all coconspirator statements and is instead impermissibly seeking to learn how the government intends to prove its case. (ECF No. 150 at 24.)

Federal Rule of Criminal Procedure 7(f) permits the court to order the government to provide a defendant with a bill of particulars. "The purposes of a bill of particulars are to inform the defendant of the nature of the charge against her to enable her to prepare for trial, to avoid or minimize the danger of surprise at time of trial, and to enable her to plead acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite." *United States v. Brown*, 2015 U.S. Dist. LEXIS 6667, 10-12 (E.D. Wis. Jan. 21, 2015) (citing *United States v. Roman*, 728 F.2d 846, 856 (7th Cir. 1984)). "Whether to require a bill of particulars rests within the sound discretion of the district court." *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003).

A statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay and is, therefore, admissible at trial against a defendant. Fed. R. Evid. 801(d)(2)(E). Thus, whether the government will allege that a person is a coconspirator may significantly affect the evidence a defendant will have to confront at trial. Although a defendant can generally speculate as to whether the government will argue that a particular witness is a coconspirator, discovery provided is unlikely to disclose the government's intentions. Not every witness, in fact not even every cooperator or confidential informant, is likely to be an alleged coconspirator.

7

When combined with the standard practice in this district to conditionally admit the statements of alleged coconspirators rather than determining the admissibility of such statements before trial, *see United States v. Arms*, No. 14-CR-78, 2015 U.S. Dist. LEXIS 72503, at *45 (E.D. Wis. June 3, 2015) (citing cases), not knowing who is allegedly a coconspirator may present challenges for a defendant preparing for trial.

Consequently, it has become common practice for judges in this district to exercise their discretion and order the government to identify before trial all persons it alleges were coconspirators. *See, e.g., United States v. Buske*, No. 09-CR-0065, 2010 U.S. Dist. LEXIS 77017, at *23 (E.D. Wis. Apr. 30, 2010); *United States v. Barnes*, No. 09-CR-248, 2010 U.S. Dist. LEXIS 45769, at *36-37 (E.D. Wis. Apr. 7, 2010); *United States v. Urbina*, No. 06-CR-336, 2007 U.S. Dist. LEXIS 55589, at *7 (E.D. Wis. July 31, 2007); *see also United States v. Knowles*, 2 F. Supp. 2d 1135, 1141 (E.D. Wis. 1998) (noting that by way of a bill of particulars a "defendant can obtain the names of the 'unindicted co-conspirators' referred to in an indictment as this information is necessary to clarify the parameters of the charged conspiracy" (dicta)). The court agrees with the statement, "In a case such as this where numerous individuals are named in the discovery or recorded on wiretaps, it is important that a defendant understand which of those persons the government alleges were part of the conspiracy." *Urbina*, 2007 U.S. Dist. LEXIS 55589, at *7.

The court understands that Sykes seeks the names of all coconspirators. To the extent such a request conflicts with the government informant privilege, *see Roviaro v.*

*United States*, 353 U.S. 53, 59 (1957), courts have resolved this tension by ordering the government to disclose "each unindicted co-conspirator either by name or, where privileged, by a CI number or other moniker used in discovery." *United States v. Barnes*, No. 09-CR-248, 2010 U.S. Dist. LEXIS 45769, at *37 (E.D. Wis. Apr. 7, 2010); *see also United States v. Arms*, No. 14-CR-78, 2015 U.S. Dist. LEXIS 72503, at *24 (E.D. Wis. June 3, 2015) ("To the extent that any defendant seeks the true identity of any unindicted co-conspirator protected by the informer privilege, the request is denied ….").

It is also common for the court to order the government to disclose the date it alleges a coconspirator joined the conspiracy. *United States v. Rodriguez*, No. 08-CR-190, 2009 U.S. Dist. LEXIS 38695, at *14 (E.D. Wis. Apr. 24, 2009); *United States v. Barnes*, No. 09-CR-248, 2010 U.S. Dist. LEXIS 45769, at *34 (E.D. Wis. Apr. 7, 2010); *United States v. Urbina*, No. 06-CR-336, 2007 U.S. Dist. LEXIS 55589, at *7 (E.D. Wis. July 31, 2007). That detail is essential to enabling Sykes to assess whether a particular statement was allegedly made in furtherance of the conspiracy.

Therefore, the court will grant Sykes's motion for a bill of particulars.

**IT IS THEREFORE RECOMMENDED** that Sykes's motion to suppress be **denied**.

**IT IS FURTHER ORDERED** that Sykes's motion for a bill of particulars is **granted**. Within 30 days of the date of this order, the government shall provide to Sykes of a bill of particulars identifying by name or, where privileged, by a CI number or

9
Case 2:17-cr-00096-PP   Filed 02/02/18   Page 9 of 10   Document 156

other moniker used in discovery, each alleged coconspirator. The government shall also disclose the approximate date every conspirator is alleged to have joined the conspiracy.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2), whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 2nd day of February, 2018.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge